UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEY LONG,<br><br>       Plaintiff,<br><br>  v.<br><br>AUTHENTIC ATHLETIX LLC, et al.,<br><br>       Defendants. | Case No. 16-cv-03129-JSC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 15 |

This breach of contract action arises out of Plaintiff Joey Long's alleged oral agreement with Defendants sports agents Authentic Athletix LLC ("Authentic Athletix") and Peter Schaffer ("Schaffer," and together, "Defendants") to pay Plaintiff for recruiting NFL players to be represented by Defendants.  Defendants contend that the Court lacks personal jurisdiction over them and have moved to dismiss under Federal Rule of Civil Procedure 12(b)(2).  (Dkt. No. 15; *see also* Dkt. No. 38.[1])  After carefully considering the parties' submissions, and having the benefit of oral argument on September 15, 2016, the Court DENIES the motion to dismiss.[2]  Plaintiff has made a sufficient showing of specific jurisdiction over Defendants as they have purposefully availed themselves of the privilege of conducting activities in California in connection with the oral agreement at issue.

**BACKGROUND**

In June 2010, during a telephone call with Schaffer, Plaintiff entered into an oral agreement with Defendants whereby Plaintiff would recruit NFL players to sign National Football League Players Association Standard Representation Agreements with Defendants.  (Compl. ¶ 8;

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[2] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Dkt. Nos. 8, 40, 41.)

1  Dkt. No. 19 ¶ 3.) Under the oral agreement, for each player that Plaintiff recruited to sign with
2  Defendants, Defendants would receive a fee totaling 3% of the player's net proceeds and Plaintiff
3  would receive a 33% share of Defendants' fee, i.e., 1% of the player's net proceeds. (Compl. ¶ 9;
4  Dkt. No. 19 ¶ 11.) Due to Plaintiff's preexisting relationship with one player in particular,
5  Brandon Browner ("Browner"), Plaintiff was to be paid 40% of the 3% fee from Browner, i.e.,
6  1.2% of Browner's net proceeds. (Compl. ¶ 9; Dkt. No. 19 ¶ 12.) At Schaffer's request, the
7  parties did not memorialize this agreement in writing; Schaffer indicated he was leaving his
8  current company, All Pro Sports and Entertainment, and did not want Plaintiff to be involved in
9  any potential litigation. (Compl. ¶ 10; Dkt. No. 19 ¶ 13.)

10  As a result of Plaintiff's recruitment efforts, Browner signed with Defendants in June
11  2010. (Compl. ¶ 13; Dkt. No. 19 ¶¶ 18-19.) Plaintiff also successfully recruited other California-
12  based players to sign NFLPA Standard Representation Agreements with Defendants, including
13  California residents Ronald Powell and Jason Hill. (Dkt. No. 19 ¶¶ 22-24.) After Browner's first
14  season playing in the NFL, Schaffer sent Plaintiff an email detailing the amount of money owed to
15  Plaintiff based on Browner's fees. (Compl. ¶ 14.) From that point on, however, Defendants failed
16  to provide Plaintiff with any details regarding fees owed to him under the agreement, despite
17  numerous verbal requests from Plaintiff. (*Id.* ¶ 15.) On February 14, 2016, Plaintiff received a
18  check from Defendants in the amount of $31,000.00—well short of what Plaintiff is entitled to.
19  (*Id.* ¶ 18.) In particular, based on Plaintiff's investigation, Defendants have received about
20  $857,850.00 in fees through Browner's representation alone, which, under the agreement, entitles
21  Plaintiff to around $343,140.00. (*Id.* ¶ 28.) Defendants have indicated they will not pay Plaintiff
22  any additional fees. (*Id.* ¶¶ 21-22).

23  Plaintiff asserts that, when he negotiated and entered into the agreement with Defendants,
24  he was a resident of and physically present in California (Dkt. No. 19 ¶¶ 4-5); he also asserts that
25  Defendants knew that he had moved to California (Dkt. No. 29 ¶¶ 3-4). Because he was living in
26  California, Plaintiff believed that any disputes related to the agreement would be litigated in
27  California. (Dkt. No. 19 ¶ 6.) Further, the terms and conditions of the parties' agreement
28  mandated that he perform services on Defendants' behalf in California. (*Id.* ¶ 7.) According to

United States District Court
Northern District of California

Plaintiff, the parties agreed that he would focus his recruiting efforts in California because Schaffer "wanted to establish a presence in California and he knew that [Plaintiff] resided in California at the time the agreement was entered into." (*Id.* ¶ 10.) After entering into the agreement, Plaintiff successfully recruited several California-based athletes to sign with Defendants, including Browner. (*Id.* ¶¶ 22-25.) At the time Browner signed the NFLPA Standard Representation Agreement with Defendants, he was also a resident of and physically present in California. (*Id.* ¶ 25.) Schaffer routinely met with and supported clients at various events in California, and all paychecks Plaintiff received from Defendants were sent to the address of one of his California residences. (*Id.* ¶¶ 27-28.)

Defendants dispute that the parties ever had an oral agreement as Plaintiff alleges. (*See, e.g.*, Dkt. No. 38 at 5.) Schaffer further declares that, for purposes of this case, he has no relevant connections to California; Schaffer states, in particular, that he "is not licensed to do business in California," "ha[s] never recruited athletes in California," and "ha[s] never advertised, marketed, or otherwise solicited [his] services in California." (Dkt. No. 15 at 2; *see also* Dkt. No. 27 ¶¶ 10-11.) Rather, Schaffer is a Colorado resident, is only licensed to do business in Colorado, and "only did business with Plaintiff when he was a Colorado resident." (Dkt. No. 15 at 1.) Schaffer asserts that Plaintiff did not move to California until after the parties entered into their agreement and that Defendants did not request that Plaintiff move out of Colorado for business purposes. (*Id.*; *see also* Dkt. No. 27 ¶¶ 4-5.) Schaffer believed that the parties' oral agreement was executed in Colorado and governed by Colorado law. (Dkt. No. 15 at 1.) Lastly, Schaffer declares that the various trips he made to California, as referenced by Plaintiff, were for vacation purposes and not for business. (Dkt. No. 27 ¶¶ 8-9.)

## LEGAL STANDARD

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Schwarzenegger v. Fred Martin Motor*

1  *Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation marks and citation omitted).  In such

2  cases, "we only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie

3  showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th

4  Cir. 1995).  Moreover, "for the purpose of this demonstration, the court resolves all disputed facts

5  in favor of the plaintiff." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  Thus,

6  "[c]onflicts between the parties over statements contained in affidavits must be resolved in the

7  plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800.

8  "Where, as here, no federal statute authorizes personal jurisdiction, the district court

9  applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647

10  F.3d 1218, 1223 (9th Cir. 2011).  California's long-arm statute has the same due process

11  requirements as the federal long-arm statute. *See Schwarzenegger*, 374 F.3d at 801.  The Due

12  Process Clause requires that nonresident defendants have "minimum contact" with the forum state

13  such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and

14  substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. &*

15  *Placement*, 326 U.S. 310, 316 (1945).  A court may exercise either general or specific jurisdiction

16  over an out-of-state defendant. *See Daimler AF v. Bauman,* 134 S. Ct. 746, 754 (2014).

## DISCUSSION

18  Plaintiff maintains the Court has specific jurisdiction over Defendants.  "A court may

19  exercise specific jurisdiction over a foreign defendant if his or her less substantial contacts with

20  the forum give rise to the cause of action before the court.  The question is whether the cause of

21  action arises out of or has a substantial connection with that activity." *Doe v. Unocal*, 248 F.3d

22  915, 923 (9th Cir. 2001) (internal citations and quotation marks omitted); *see also Goodyear*

23  *Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) ("[S]pecific jurisdiction is

24  confined to adjudication of issues deriving from, or connected with, the very controversy that

25  establishes jurisdiction.") (internal quotation marks and citation omitted).  The Ninth Circuit has

26  developed a three-prong test for analyzing specific jurisdiction:

27  (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully

4

>avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
>(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
>(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The plaintiff has the burden of proving the first two prongs; if it does so, the defendant must demonstrate that the court's exercise of personal jurisdiction would be unreasonable. *Id.* "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach Co.*, 453 F.3d at 1155 (internal citations and quotation marks omitted).

### I. Purposeful Availment

Under the first prong, a plaintiff must establish that the defendant "either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California." *Schwarzenegger*, 374 F.3d at 802. A purposeful availment analysis "is most often used in suits sounding in contract," while a purposeful direction analysis "is most often used in suits sounding in tort." *Id.* Thus, the Court will apply the purposeful availment test.

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id.*; *see also Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) ("Purposeful availment requires that the defendant have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.") (internal quotation marks omitted). However, "merely contracting with a resident of the forum state is insufficient to confer specific jurisdiction over a nonresident." *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995). A contract is only an intermediate step that connects prior negotiations with future consequences, the real object of a business transaction. Therefore, courts consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine "whether the defendant purposefully established minimum contacts within the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985); *see also Longyu Int'l Inc. v. E-Lot Elecs. Recycling Inc.*,

1  No. 2:13-CV-07086-CAS, 2014 WL 1682811, at *2 (C.D. Cal. Apr. 29, 2014) ("[A] court must

2  evaluate four factors to determine whether this prong is met: (1) prior negotiations, (2)

3  contemplated future consequences, (3) the terms of the contract, (4) the parties' actual course of

4  dealing.") (citation omitted).

### A.   Prior Negotiations

"If the defendant directly solicits business in the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986) (citation omitted); *see also Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990) ("Soliciting business in the forum state will generally be considered purposeful availment if that solicitation results in contract negotiations or the transaction of business."), *rev'd on other grounds*, 499 U.S. 585 (1991). "Similarly, conducting contract negotiations in the forum state will probably qualify as an invocation of the forum law's benefits and protections." *Decker*, 805 F.2d at 840 (citation omitted).

Based on the record before the Court, Defendants directly solicited business in California. Although it is unclear which party initiated first contact, Plaintiff has provided competent evidence that Defendants solicited and negotiated with Plaintiff, a California resident, to perform services on their behalf in California and to help them expand their business presence in California. (*See, e.g.*, Dkt. No. 19 ¶¶ 3-6, 10.) As a result of the solicitation and negotiations, the parties entered into their oral contract. Further, through Plaintiff's services, Defendants also solicited, and received, business from California-based athletes. (*See id.* ¶¶ 22-25.) Defendants' direct solicitation of business in California weighs strongly in favor of a finding of purposeful availment.

Defendants dispute that Plaintiff resided in California at the time of the alleged negotiations and that the recruited athletes were California residents. Such factual disputes, however, must be resolved in Plaintiff's favor. *See Pebble Beach*, 453 F.3d at 1154. Defendants' citation to *Taylor v. Portland*, 383 F.2d 634 (9th Cir. 1967), for the proposition that a plaintiff must produce more than affidavits to support personal jurisdiction when disputed, is misplaced. *Taylor* holds that a plaintiff may not rest on the pleadings, that is, on the allegations in the

complaint, to establish a prima facie case of personal jurisdiction; instead, the plaintiff must submit supporting affidavits. *Id.* at 639.  Plaintiff has done just that.

The location of the negotiations does not support purposeful availment because Schaffer never traveled to California to conduct any negotiations. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 816 (9th Cir. 1988). Similarly, that Schaffer contacted Plaintiff in California by telephone during the negotiations does not support purposeful availment. *See Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) ("[U]se of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.") (internal quotation marks omitted).  Nonetheless, Defendants' absence from California during negotiations does not defeat personal jurisdiction. *See id*. ("[T]he physical absence of the defendant and the transaction from the forum cannot defeat the exercise of personal jurisdiction.") (internal quotation marks omitted).

Nor does the fact that Plaintiff entered into the contract in California, by itself, avail Defendants of the benefits and protections of California's laws. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Accepting as true Plaintiff's statement that he agreed to the oral contract over the phone while in California, this conduct constitutes a unilateral activity and does not establish Defendants' purposeful availment of California's laws. There is no allegation that Schaffer travelled to California to negotiate or enter into any contract; even if there were, the execution of the contract in the forum would likely be a mere "formality" that would not support a finding of purposeful availment. *See McGlinchy*, 845 F.2d at 816.

In sum, Defendants' solicitation of Plaintiff's services and of clients in California weighs in favor of a finding of purposeful availment, while the location of the negotiations and signing of the documents do not.

**B.     Future Consequences**

Under the second factor, "[p]arties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions

1  in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (internal
2  quotation marks omitted). "[*Burger King*] insisted that past and future consequences of the
3  contractual arrangement involving a resident of the forum state be evaluated." *Corporate Inv.*
4  *Business Brokers v. Melcher*, 824 F.2d 786, 789 (9th Cir. 1987); *see also Hirsch v. Blue Cross,*
5  *Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986) ("The purposeful availment
6  prong is satisfied when a defendant takes deliberate actions within the forum state or creates
7  continuing obligations to forum residents."). As noted above, Defendants contracted with
8  Plaintiff, a resident of California, to perform services in California and to expand Defendants'
9  presence in California. The contract created continuing obligations whereby Plaintiff recruited on
10 Defendants' behalf in California and Defendants paid Plaintiff, in California, for his services.
11 Additionally, the parties' obligations appear to have extended over a period of several years, as the
12 parties entered into the oral contract in June 2010 and Defendants made their last payment of
13 $31,000 to Plaintiff in February 2016. (*See* Compl. ¶¶ 8, 18; Dkt. No. 28-13 at 3 (Ex. M).) The
14 parties' significant continuing obligations to each other under the agreement favor a finding of
15 purposeful availment.
16      Defendants dispute that they ever did business with Plaintiff in California. But again, this
17 dispute of fact must be resolved in Plaintiff's favor as Plaintiff has submitted a declaration
18 attesting to his ongoing business relationship with Defendants for work conducted in California
19 while Plaintiff lived in California. (*See* Dkt. No. 19 ¶¶ 17-20, 22-27.)

20      **C.   Terms**

21      Terms that provide fair notice to a defendant that he may possibly be subject to suit in the
22 forum state weigh in favor of a purposeful availment finding. *See Burger King*, 471 U.S. at 463;
23 *Doe*, 248 F.3d at 924. Here, Plaintiff asserts that the terms of the agreement mandated that he
24 perform his services in California. (Dkt. No. 19 ¶ 7.) Further, the terms of the alleged agreement
25 provided that Plaintiff would focus his efforts on Defendants' behalf in California because
26 Defendants wanted to establish a presence in California and knew that Plaintiff resided in
27 California. (*Id.* ¶ 10.) While Schaffer states that neither he nor Authentic Athletix asked Plaintiff
28 to move out of Colorado for business purposes (Dkt. No. 15 at 1; Dkt. No. 27 ¶¶ 4-5), the Court

1  must resolve any conflicts of fact in Plaintiff's favor.  *See Schwarzenegger*, 374 F.3d at 800.
2  Contract terms requiring Plaintiff to perform services in California and to expand Defendants'
3  business in California provide fair notice that Defendants may be subject to suit in California.
4  Accordingly, the terms of the agreement weigh in favor of a finding of purposeful availment.

### D. Course of Dealing

The "quality and nature" of Defendants' relationship with Plaintiff in California, as seen through the parties' course of dealing over several years, "can in no sense be viewed as random, fortuitous, or attenuated."  *Burger King*, 471 U.S. at 480 (internal quotation marks omitted). Consistent with the terms of the parties' agreement, Plaintiff, while residing in California, focused his recruiting efforts for Defendants in California and successfully recruited several California-based athletes, including Browner and two other California residents, Ronald Powell and Jason Hill.  (Dkt. No. 19 ¶¶ 7, 10, 17-20, 22-25.)  Further, for his services rendered in California, Defendants mailed paychecks to Plaintiff at one of his residences in California.  (*Id.* ¶ 28.) Schaffer also routinely met with clients, including the California-based clients that Plaintiff recruited, in California.  (*Id.* ¶¶ 26-27.)  The parties' course of dealing thus weighs in favor a finding of purposeful availment.

To summarize, each of the four factors weighs in favor of a finding of purposeful availment.  Accordingly, the Court finds that Defendants purposefully availed themselves of the protections and benefits of California's laws.

## II. The Claims' Relation to Defendants' Forum-Related Activities

"This requirement is met if, but for a defendant's forum-related activities through which a defendant purposely avails itself of the forum, the plaintiff would not have suffered injury." *Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F. Supp. 2d 1194, 1204 (C.D. Cal. 2000) (internal quotation marks omitted).  If Defendants had not done business with Plaintiff and purposefully availed themselves of the forum state, Plaintiff would have no claims against them because he would not have suffered an injury that resulted out of the alleged breach of contract. *See Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).  Defendants do not contest this prong of the specific jurisdiction test.  The claims are related to Defendants' forum-related activities.

9

### III. Reasonableness

Personal jurisdiction over a case must not offend "traditional notions of fair and substantial justice." *Int'l Shoe*, 326 U.S. at 316. Therefore, it must be reasonable to require the defendant to defend himself in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Because Plaintiff has satisfied the first two prongs of the Ninth Circuit's test for specific personal jurisdiction, the burden shifts to Defendants to present a compelling case that the exercise of personal jurisdiction would be unreasonable. *Schwarzenegger*, 374 F.3d at 802. Seven factors are weighed to determine reasonableness, none of which are dispositive:

> 1) the extent of the defendant's purposeful interjection into the forum state's affairs; 2) the burden on the defendant; 3) conflicts of law between the forum and defendant's home jurisdiction; 4) the forum's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute; 6) the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum

*Roth*, 942 F.2d at 623.

The first factor depends on the same analysis that applies to purposeful availment. *See id.* For the reasons stated above, the parties' contractual relationship was relatively extensive, proceeded over the course of several years, and required Plaintiff to work and focus his services in California. The first factor weighs in favor of a finding of reasonableness.

Under the second factor, Defendants correctly note that "[t]he primary concern is for the defendant's burden." *Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1444 (9th Cir. 1987) (citation omitted). However, "[u]nless such inconvenience [to the defendant] is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1481 (9th Cir. 1986) (citation omitted). Defendants argue that litigating in California would place a "heavy burden" on him, but he provides no evidence demonstrating that it would amount to a deprivation of due process. (*See* Dkt. No. 15 at 7.) Therefore, the burden on Defendants is not substantial enough to weigh against a finding of reasonableness.

The third factor favors a finding of reasonableness. This factor is a lesser barrier to reasonableness when the defendant resides in another state rather than in a foreign nation. *See*

*Roth*, 942 F.2d at 623; *see also Pac. Atl. Trading Co. v. M/V Main Exp.*, 758 F.2d 1325, 1330 (9th Cir. 1985) ("[W]hen the nonresident defendant is from a foreign nation, rather than from another state in our federal system, the sovereignty barrier is higher, undermining the reasonableness of personal jurisdiction."). While the parties have provided competing declarations as to which forum's contract law applies—California or Colorado—the Court, for purposes of this motion, must accept Plaintiff's version of the facts. *See Schwarzenegger*, 374 F.3d at 800. Thus, there is no conflict of laws because a Colorado court would be required to apply California contract law.

The fourth factor weighs in favor of a finding of reasonableness because "[a] State generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473 (internal quotation marks omitted). Here, Plaintiff is a resident of California, and therefore California has an interest in providing itself as a forum for resolving the current dispute.

The fifth factor, regarding efficient judicial resolution, focuses on the location of the evidence and witnesses. *See Caruth*, 59 F.3d at 129. This factor is not weighed heavily given the modern advances in communication and transportation. *Id.* In any event, this case, based on an oral agreement, does not appear to require a substantial amount of evidence or a large number of witnesses; in fact, neither side has identified any specific non-party witnesses or their locations. This factor is neutral.

The sixth factor favors a finding of reasonableness because it will indeed be more convenient for Plaintiff to litigate the case in the same state where he resides.

The seventh factor favors Defendants. The test is not whether the current forum state is more convenient for Plaintiff, but rather whether Plaintiff would be precluded from adjudicating the dispute in a different forum. *See Roth*, 942 F.2d at 624-25. The burden is on Plaintiff to provide evidence that he would be precluded from doing so. *Id.* at 624. Plaintiff has provided no such evidence.

In determining the reasonableness of litigating this case in California, factors one, two, three, four, and six favor Plaintiff. Factor five is neutral, and only factor seven favors Defendants and a finding against reasonableness. On balance, it is reasonable to subject Defendants to defend

Case 3:16-cv-03129-JSC Document 42 Filed 10/14/16 Page 12 of 12

themselves in California.

## CONCLUSION

For the reasons stated above, the Court DENIES Defendants' motion to dismiss for lack of personal jurisdiction. The Court will hold a case management conference on November 17, 2016 at 1:30 p.m. The parties shall submit a joint case management conference statement that includes a proposed case schedule at least one week before the conference.

**IT IS SO ORDERED.**

Dated: October 14, 2016

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

12