UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEY LONG,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AUTHENTIC ATHLETIX LLC, et al.,<br><br>　　　　Defendants. | Case No. 16-cv-03129-JSC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt Nos. 54 & 57 |

Plaintiff Joey Long ("Plaintiff") seeks to recover damages from Peter Schaffer ("Schaffer") and Authentic Athletix LLC (together, "Defendants"), based on breach of a written contract and related claims. The Court previously granted Defendants' motion to dismiss for failure to state a claim upon which relief could be granted. (Dkt. No. 52.) Thereafter Plaintiff filed his First Amended Complaint ("FAC"). (Dkt. No. 53.) Defendants subsequently filed related motions to dismiss Plaintiff's FAC on various grounds under Rule 12(b). (Dkt. Nos. 54 & 57.) Having carefully considered the parties' submissions, and having had the benefit of oral argument on March 9, 2017, the Court DENIES Defendants' motion[1].

## BACKGROUND

**I.   Factual Allegations**

In June 2010, Plaintiff entered into an oral agreement with Schaffer, and/or Schaffer's sports agency, Authentic Athletix. (Dkt. No. 53 ¶ 8.) Plaintiff agreed to recruit National Football

---

[1] Authentic Athletix filed a motion to dismiss Plaintiff's FAC. (Dkt. No. 54.) Schaffer subsequently filed a second motion to dismiss, which mirrored the arguments and defenses put forth in Authentic Athletix's motion, while also adding new arguments. (Dkt. No. 57.) This Order cites to Schaffer's motion (Dkt. No. 57) but disposes of both motions to dismiss. (Dkt. Nos. 54 & 57.)

League ("NFL") players to sign NFL Players Association Standard Representation Agreements ("Representation Agreements") with Defendants. (*Id*.) Defendants, in turn, agreed to pay Plaintiff 33% of 3% of the net proceeds for each player that Plaintiff recruited to sign a Representation Agreement with Defendants and 40% of 3% for certain, designated players. (*Id*. ¶ 9.)

At the time the parties entered into the oral agreement, Schaffer—an attorney and member of the bar in Colorado—worked for All Sports Pro and Entertainment ("All Sports"). (*Id*. ¶¶ 10-11.) Schaffer informed Plaintiff that he would soon be resigning from All Sports so he wanted to wait to execute a written agreement to avoid the possibility of litigation with All Sports. (*Id*. ¶ 11.) Plaintiff agreed, so the parties did not enter a written agreement at that time. (*Id*. ¶ 12.) Sometime in 2010, due to Plaintiff's efforts, NFL player Brandon Browner signed with Defendants as his agent in negotiations for his 2011 NFL contract with the Seattle Seahawks. (*Id*. ¶ 18.)

On September 13, 2011, Schaffer informed Plaintiff via email that he had resigned from All Sports and created his own company, Authentic Athletix. (*Id*. ¶ 13.) In a series of emails that followed, Plaintiff and Schaffer "voided their previous written and oral contract with [All Sports]" and negotiated a new agreement between Plaintiff, Schaffer, and Schaffer's new company, Authentic Athletix. (*Id*. ¶ 14.) Under the terms of this new agreement, which were memorialized via email, Defendants would pay Plaintiff 33% of 3% of the proceeds for each Player that signed a Representation Agreement, except Plaintiff would receive 40% of 3% of the proceeds for Brandon Browner.[2] (*Id*. ¶ 15.) Defendants agreed, also via email, to provide Plaintiff a written contract with these same terms. (*Id*. ¶ 16.) In a subsequent phone call, the parties confirmed the terms of their agreement and agreed that Plaintiff would continue his recruiting efforts in California on behalf of the Defendants. (*Id*. ¶ 17.) Defendants provided Plaintiff with Authentic Athletix business cards and a company email address. (*Id*.) Schaffer also requested that Plaintiff contact All Sports to inform them that Plaintiff would no longer work for them because he was now

---

[2] The complaint does not specify the timing of Plaintiff's payments—that is, whether he would be paid per month, per year, or per NFL season. However, based on later FAC allegations, Plaintiff appears to have been paid per season. (*See* Dkt. No. 53 ¶¶ 20-22.)

working for Authentic Athletix. (*Id.*) Plaintiff did so. (*Id.*) Over the next few years, Plaintiff repeatedly requested a written contract memorializing the parties' agreement, but Defendants refused to provide one "so as to continue [their] perpetration fraud upon Plaintiff." (*Id.* ¶ 23.)

Sometime after February 8, 2012, Plaintiff received his first check from Authentic Athletix, signed by Schaffer, amounting to Plaintiff's 40% share of Mr. Browner's fee minus expenses. (*Id.* ¶ 20.) The check also included an accounting which detailed how Defendants calculated the fee. (*Id.*) Every payment Defendants made to Plaintiff in subsequent seasons amounted to less than 40% of Mr. Browner's representation fees and did not include an accounting. (*Id.* ¶¶ 21-22.)

Plaintiff repeatedly requested a copy of Mr. Browner's contract to verify that Defendants were compensating him according to the terms of their agreement but to no avail. (*Id.* ¶ 23.) Eventually, Plaintiff obtained a copy of Mr. Browner's contract on his own and discovered Defendants had been paying him less than the agreed upon amount. (*Id.* ¶ 24.) On February 14, 2016, Defendants sent Plaintiff a check for $31,000 which he never cashed. (*Id.* ¶¶ 25, 30.) Shortly thereafter Plaintiff contacted Defendants to inform them that the check was "short" of the amount due. (*Id.* ¶ 26.) Schaffer responded by telling Plaintiff that he would no longer pay him or speak to him at all. (*Id.*)

On March 28, 2016, Plaintiff had an attorney contact Schaffer to ask why his check was short and when he could expect full payment for services rendered. (*Id.* ¶ 27.) Schaffer told Plaintiff's attorney that he was willing to speak to Plaintiff to resolve their dispute. (*Id.*) Plaintiff and Schaffer spoke later the same day, but they did not reach a resolution. (*Id.* ¶ 28.) Instead, Schaffer again indicated that he would not pay Plaintiff for any past due or future fees. (*Id.*) Schaffer confirmed as much in an email following the phone call. (*Id.* ¶ 29.)

Plaintiff alleges that Schaffer misrepresented his intent to pay Plaintiff the agreed upon amount, and Plaintiff relied on that misrepresentation. (*Id.* ¶¶ 56-58.) Specifically, Plaintiff alleges that Schaffer never intended to pay Plaintiff for his services. (*Id.* ¶ 63.) Plaintiff would not have contracted with Defendants absent Schaffer's representations. (*Id.* ¶ 64.)

Accordingly, Defendants owe Plaintiff money for the recruitment services he rendered

3

1   over the last four years.  (*Id*. ¶ 43.)  To date, Mr. Browner has signed NFL contracts in excess of
2   $28,000,000.00.  (*Id*. ¶ 35.)  Defendants have earned approximately $857,850.00 for representing
3   Mr. Browner.  (*Id*.)  Thus under the terms of their agreement, Plaintiff is entitled to approximately
4   $343,140.00.  (*Id*.)

## II.   **Procedural History**

Plaintiff filed this action on June 8, 2016, alleging that Defendants breached an oral agreement that the parties had entered into in June 2010.  (Dkt. No. 1.)  The Clerk of Court entered default against both Defendants in July (Dkt. Nos. 13, 14), but later clarified that the default against Schaffer had been entered in error, and the Court vacated the entry of default against Authentic Athletix.  (Dkt. No. 39.)  In October 2016 the Court denied Defendants' motion to dismiss for lack of personal jurisdiction.  (Dkt. No. 42.)  The Court then granted Defendants' 12(b)(6) motion to dismiss for failure to state a claim, noting that instead of responding to Defendants' argument that the alleged agreement fell within the statute of frauds, Plaintiff alleged a different agreement altogether.  (Dkt. No. 52 at 1-2.)

Plaintiff subsequently filed the First Amended Complaint ("FAC") on December 29, 2016.  (Dkt. No. 53.)  The FAC is largely identical to the first complaint except that it alleges that the parties also entered into a written contract, memorialized via email, in September 2011 which constitutes the contract now at issue in this action.  (*Id*.)  The FAC includes seven causes of action: (1) breach of contract; (2) unjust enrichment; (3) money had and received; (4) constructive trust; (5) conversion; (6) misrepresentation; and (7) fraud.  (*Id*. at 1.)  Plaintiff is seeking damages and attorney's fees.  (*Id*. at 11.)  The present motion to dismiss followed.  (Dkt. No. 54.)

**DISCUSSION**

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b) on a number of grounds: (1) Plaintiff has not met the jurisdictional minimum for the amount in controversy under 28 U.S.C. section 1332(a); (2) the statute of limitations bars Plaintiff's breach of contract claims; (3) the statute of frauds precludes enforcing any oral contract that may have existed between the parties; (4) Plaintiff has not proven that a written contract exists; (5) Plaintiff has not adequately alleged his fraud claim; (6) the statute of limitations bars Plaintiff's fraud claim; (7) Plaintiff will

be unjustly enriched; and (8) Defendant Schaffer is not a proper party in interest. (Dkt. No. 57 at 5-22.) Defendants have not specified which Rule 12(b) subsection they assert in connection with any of their arguments. (*Id*. at 4.) The Court construes Defendants to have moved to dismiss under Rules 12(b)(1) and 12(b)(6).[3]

### A. **12(b)(1) Motion to Dismiss**

Defendants first argue that Plaintiff has not met the jurisdictional requirement of 28 U.S.C. section 1332(a) because Plaintiff failed to prove that the amount in controversy exceeds $75,000. (Dkt. No. 57 at 5.) Although Defendants do not expressly cite the rule, the Court construes this as a Rule 12(b)(1) motion challenging the Court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).

"Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). Thus, the party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id*.

"The sufficiency of the pleadings to establish subject matter jurisdiction is determined by whether the movant brings a facial or factual challenge." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court assumes that the complaint's allegations are true and draws all reasonable inferences in favor of the party opposing dismissal, similar to a 12(b)(6) motion. *See Wolfe*, 392 F.3d at 362. "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction" by

---

[3] The Court can properly consider this as a motion brought under Rule 12(b)(1) and 12(b)(6). *See Andersen v. United States*, 298 F.3d 804, 807 (9th Cir. 2002) ("The substance of the motion, not its form, controls its disposition."); *see also Hasbrouck v. Texaco, Inc.*, 879 F.2d 632, 635 (9th Cir. 1989) ("The nomenclature the movant uses is not controlling").)

offering affidavits or other evidence to dispute the allegations in the complaint. *Safe Air*, 373 F.3d at 1039. To resolve this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id*. (internal citations omitted). Instead, Plaintiff "bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Harris v. Rand*, 682 F.3d 846, 850–51 (9th Cir. 2012)). However, "if the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." *Leite*, 749 F.3d at 1121–22.

Defendants' challenge to the Court's subject matter jurisdiction is a factual attack: Defendants attached a demand letter to their motion[4] in which Plaintiff states that Defendants owed him $41,800.00 as of March 17, 2016. (Dkt. No. 54-1 at 1.) Defendants argue that Plaintiff's new damages figure in his FAC is "double-dipping from the demand letter" and that his math is "confusing and duplicative." (Dkt. No. 57 at 6.) They contend that Plaintiff has failed to prove the amount in controversy "by a preponderance of the evidence." (*Id*. at 5.)

Plaintiff, in turn, argues that the figures in the demand letter were "best estimates for the 2013, 2014, and 2015 seasons" and the demand letter "discounts the 2015 amount as Plaintiff had a $31,000 check in hand and was not including the full $60,000 owed in his demand . Moreover the demand letter did not include the amount owed for 2016." (Dkt. No. 56 at 8.)

Plaintiff has met his burden of proving jurisdiction by a preponderance of the evidence. Plaintiff explains that the amount that he demanded in the initial demand letter—$41,800—does not include the full $60,000 that Plaintiff is entitled to for the 2015 season, nor does it include the amount Defendants owe Plaintiff for the 2016 season. (Dkt. No. 56 at 8.) It light of this explanation, the Court finds that it is more likely than not that the amount in controversy is over $75,000. Accordingly, the Court has subject matter jurisdiction.

---

[4] Authentic Athletix attached the demand letter to their motion to dismiss (Dkt. No. 54), but Schaffer did not attach it to his motion. (Dkt. No. 57.) Because the Court is considering the motions together, *see supra* footnote 1, the Court will consider the demand letter as extrinsic evidence of the amount in controversy. *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014).

**B.   12(b)(6) Motion to Dismiss**

Defendants make various arguments and affirmative defenses in support of their motion to dismiss: (1) the statute of limitations bars Plaintiff's breach of contract claims; (2) Plaintiff has not adequately alleged his breach of contract claim; (3) the statute of frauds precludes enforcement of the contract; (4) Plaintiff has not adequately alleged his fraud claim; (5) the statute of limitations bars Plaintiff's fraud claim; (6) the statute of frauds precludes Plaintiff's unjust enrichment claim; and (7) Defendant Schaffer is not a proper party in interest.  (Dkt. No. 57 at 7-12.)

Although Defendants do not reference Rule 12(b)(6) in their motion, the Court construes these as arguments brought under 12(b)(6) because they all go to whether the FAC states a claim. *See* Fed. R. Civ. P. 12(b)(6).  Because the Court is sitting in diversity, it applies California's choice-of-law rules in deciding what law applies to the alleged contract. *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010) (stating that "[a] federal court sitting in diversity applies the forum state's choice of law rules").  The California choice-of-law provision for a breach of contract action states, "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646.  Defendants have not challenged the presumption that California substantive law applies here, so the Court applies California law.

        **1.**        **Breach of Contract**

                *a.*        *Plaintiff Has Adequately Alleged a Breach of Contract Claim*

The elements of breach of contract under California law are: (1) a contract existed between the parties; (2) the plaintiff performed her contractual duties or was excused from nonperformance; (3) the defendant breached those contractual duties; and (4) plaintiff's damages were a result of the breach. *Buschman v. Anesthesia Bus. Consultants, LLC*, 42 F. Supp. 3d 1244, 1250 (N.D. Cal. May 13, 2014) (citing *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008)).  Breach of contract claims are subject to the notice pleading standard of Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a).

1    Defendants argue that Plaintiff has not established the first element: the existence of a
2    contract between the parties. (Dkt. No. 57 at 7.) Specifically, Defendants contend that the emails
3    between Plaintiff and Defendants do not constitute a valid contract for a variety of reasons,
4    including: Plaintiff failed to attach the emails to his complaint; they do not demonstrate a meeting
5    of the minds as to the material terms; they were not intended to be binding; and there was never
6    any offer or acceptance. (*Id*. at 7-11.)
7    "Under California law, to state a claim for breach of contract a plaintiff must plead the
8    contract, plaintiffs' performance (or excuse for nonperformance), defendant's breach, and damage
9    to plaintiff therefrom." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. July 12,
10   2012) (internal quotations omitted). "A written contract may be pleaded either by its terms—set
11   out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated
12   therein by reference—or by its legal effect." *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th
13   1457, 1489 (2006); *accord Haskins v. Symantec Corp.*, No. 13–cv–01834–JST, 2013 WL
14   6234610, *10 (N.D. Cal. Dec. 2, 2013). "In order to plead a contract by its legal effect, plaintiff
15   must allege the substance of its relevant terms." *McKell*, 142 Cal. App. 4th at 1489.
16   Plaintiff alleges the terms of the parties' agreement as: Defendants would pay Plaintiff
17   33% of 3% of the representation fees for recruiting NFL players to sign Representation
18   Agreements with Defendants, and 40% of 3% for Brandon Browner. (Dkt. No. 53 ¶ 15.) Plaintiff
19   would continue his recruiting efforts on behalf of Defendants in California under these terms. (*Id*.
20   ¶ 17.) The crux of the parties' agreement was that Defendants would compensate Plaintiff for
21   recruiting NFL players to sign with Defendants. Plaintiff alleges these relevant terms, including
22   the exact percentages of the representation fees that Plaintiff would receive for recruiting both
23   regular, unspecified players and for recruiting Mr. Browner. (*Id*. ¶¶ 14-15, 17.) Plaintiff has
24   sufficiently pled the contract.
25   Defendants next contend that there is no enforceable contract because there was no
26   meeting of the minds as to the material terms, offer and acceptance, and Schaffer did not intend to
27   be bound. (Dkt. No. 57 at 7, 9.)
28   Mutual assent is required to form a contract. *Binder v. Aetna Life Ins. Co.*, 75 Cal. App.

4th 832, 850 (1999). California courts use an objective standard when analyzing whether mutual assent existed: "[A plaintiff's] uncommunicated subjective intent is not relevant. The existence of mutual assent is determined by objective criteria. The test is whether a reasonable person would, from the conduct of the parties, conclude that there was mutual agreement." *Hilleary v. Garvin*, 193 Cal. App. 3d 322, 327 (1987) (internal citations omitted); *see also Roth v. Malson*, 67 Cal. App. 4th 552, 557 (1998). Both actions and words are relevant. *See Merced County Sheriff's Employees' Assn. v. County of Merced*, 188 Cal. App. 3d 662, 670 (1987). Accordingly, "[the] offer must be sufficiently definite, or must call for such definite terms in the acceptance that the performance promised is reasonably certain." *Ladas v. California State Automobile Ass'n.*, 19 Cal. App. 4th 761, 770 (1993). "The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Weddington Prods. Inc., v. Flick*, 60 Cal. App. 4th 793, 811-12 (1998) (internal quotations and citation omitted). "[A]cceptance of an offer . . . may be manifested by conduct as well as by words," *Russell v. Union Oil Co.*, 7 Cal. App. 3d 110, 114 (1970), and may be "implied through action or inaction." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014); *see Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991). The parties need not affirmatively assent to each term or provision. "The manifestation of assent to a contractual provision may be wholly or partly by written or spoken words or by other acts or by failure to act." *Merced County Sheriff's Employees' Assn.*, 188 Cal. App. 3d at 670 (internal citations omitted). The trier of fact must determine "whether a reasonable person would necessarily assume . . . a willingness to enter into contract." *In re First Capital Life Insurance Co.*, 34 Cal. App. 4th 1283, 1287 (1995) (internal citations omitted).

   Plaintiff alleges that the parties negotiated the agreement and its terms via email. (Dkt. No. 53 ¶¶ 14-16.) After the parties executed the agreement, Plaintiff continued his recruiting efforts for Defendants in California. (*Id.* ¶ 17.) Defendants provided Plaintiff with business cards and a company email address. (*Id.*) Approximately six months later, Defendants mailed Plaintiff a check for 40% of 3% of Mr. Browner's representation fees, the amount that the parties had agreed upon under the contract's terms. (*Id.* ¶ 20.) Construing all inferences in Plaintiff's favor, and

9

given the allegations as to Defendants' subsequent conduct— most notably that Defendants in fact paid Plaintiff the agreed upon sum— the complaint plausibly alleges mutual assent and a valid offer and acceptance.

Finally, Defendants contend that there was no new consideration for the 2011 written contract that replaced the voided oral agreement. (Dkt. No. 57 at 18-20.) To be enforceable, a contract must be supported by consideration. Cal. Civ. Code § 1550; *see also US Ecology Inc., v. State of Cal.*, 92 Cal. App. 4th 113, 128 (2001) ("A promise is not enforceable unless consideration was given in exchange for the promise.").) "Consideration consists of either a benefit to the promisor or a detriment to the promisee. It is enough that something is promised, done, forborne, or suffered by the party to whom the promise is made as consideration for the promise made to him." *Speirs v. Bluefire Ethanol Fuels, Inc.*, 243 Cal. App. 4th 969, 987 (2015).

Plaintiff alleges that he and Defendant Schaffer mutually voided their prior written and oral agreements with All Sports, and negotiated a new agreement via email, adding Defendant Authentic Athletix as a party. (Dkt. No. 53 ¶ 14.) Under this new agreement, Plaintiff agreed to recruit NFL players to sign representation agreements with Schaffer and now with Authentic Athletix—a new party to the contract— in exchange for a certain percentage of NFL players' representation fees. (*Id.* ¶ 15.) The new agreement necessarily involved new consideration; Plaintiff had to make a new promise to recruit players for Authentic Athletix in exchange for a fee. Accordingly, Plaintiff has adequately alleged a breach of contract claim.

### b. *The Statute of Limitations Does Not Bar a Breach of Contract Claim*

Under California law, there is a two-year statute of limitations for breach of an oral contract, and a four-year limitations period for breach of a written contract. Cal. Civ. Code §§ 337, 339. Defendants argue that the statute of limitations bars a breach of contract claim in connection with the 2010 oral agreement. (Dkt. No. 57 at 7.) Plaintiff alleges, however, that that oral agreement was "voided" and replaced by the 2011 email agreement. (Dkt. No. 53 ¶ 14.) Thus, there is no claim based upon the 2010 oral agreement. Defendants do not argue that a claim for breach of the written contract is untimely under the longer, four-year statute of limitations.

### c.  *The Statute of Frauds Does Not Preclude a Breach of Contract Claim*

Defendants next contend that the statute of frauds precludes enforcement of the 2011 agreement, arguing: (1) the parties' agreement was entirely oral because the Court cannot consider the emails when deciding a motion to dismiss under Rule 12(b)(6) and, in any event, the emails do not count as memoranda; (2) the agreement is an employment or services agreement that could not be performed within one year of its making; and (3) Plaintiff did not fully perform the agreement. (Dkt. No. 57 at 13.)

The statute of frauds is an affirmative defense. *See* Fed R. Civ. P. 8(c). It requires certain agreements, "or some note, or memorandum thereof," be in writing or they are invalid. Cal. Civ. Code. § 1624. The memorandum need only "identif[y] the subject of the parties' agreement, show[] that they made a contract, and state[] the essential contract terms with reasonable certainty." *Sterling v. Taylor*, 40 Cal. 4th 757, 766 (2007). "A written memorandum is not identical with a written contract [citation]; it is merely evidence of it and usually does not contain all of the terms." *Crowley v. Modern Faucet Mfg. Co.*, 44 Cal. 2d 321, 323 (1955).

Plaintiff alleges that the parties negotiated their agreement entirely via email. (Dkt. No. 53 ¶¶ 14-16.) Under their agreement's terms, Defendants would pay Plaintiff a percentage of representation fees for recruiting NFL players for some unspecified period of time. (Dkt. No. 53 ¶¶ 14-15, 17.) While Defendants may dispute the existence of the emails and what they do and do not prove (Dkt. No. 57 at 16), it is enough at this early stage that Plaintiff has alleged that they exist. Construing all of Plaintiff's FAC allegations as true, the emails constitute sufficient memoranda to remove the agreement from the statute of frauds. Accordingly, the Court need not address Defendants' remaining arguments and declines to dismiss on these grounds.

### 2. Fraud

#### a. *Plaintiff States a Fraud Claim*

To state a fraud claim a plaintiff must allege (1) misrepresentation, including a false representation, concealment, or nondisclosure; (2) knowledge of falsity; (3) intent to defraud, otherwise known as an intent to induce reliance; (4) justifiable reliance; and (5) resulting damage.

11

*Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997) (internal quotations and citation omitted).

California law recognizes both fraud in the execution and fraud in the inducement. *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996). The former occurs when "the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all, mutual assent is lacking, and [the contract] is void." *Ford v. Shearson Lehman American Express, Inc.*, 180 Cal. App. 3d 1011, 1028 (1986). The latter occurs when "the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable." *Id*.

Fraud claims are subject to the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff must include the "who, what, when, where, and how" of the fraud. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Ultimately, "[a] pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

Plaintiff alleges that Schaffer misrepresented to him that Defendants would compensate him 33% of 3% of the net proceeds of the NFL players he recruited to sign Representation Agreements, and 40% of 3% of the proceeds from Brandon Browner, specifically. (Dkt. No. 53 ¶ 62.) Plaintiff believes Defendants had no intention to actually compensate him for his work. (*Id*. ¶ 63.) In support of his theory, Plaintiff alleges that Defendants perpetrated this fraud by refusing to provide Plaintiff with Mr. Browner's contract, or any accounting of the representation fees, in response to Plaintiff's numerous requests. (*Id*. ¶ 65.)

These allegations are sufficient to put Defendants on notice of the circumstances constituting fraud such that they may prepare an adequate answer. Plaintiff claimed that Defendants induced him to enter into the contract by promising to compensate him; Defendants had no intention to actually compensate him the correct amount; and Defendants purposely withheld an accounting of the representation fees and the client contracts in order to perpetrate the

fraud.  (Dkt No. 53 ¶¶ 54-66.)  Accordingly, Plaintiff has fulfilled the requirements for pleading fraud under Rule 9(b).

### b. *The Statute of Limitations Does Not Bar Plaintiff's Fraud Claims*

"A claim that a cause of action is barred by the statute of limitations is an affirmative defense." *Fanucci v. Allstate Ins. Co.*, 638 F. Supp. 2d 1125, 1132 (N.D. Cal. June 30, 2009); *see also Wyatt v. Terhune*, 315 F.3d 1108, 1117–18 (9th Cir. 2003) (stating that "it is well-settled that statutes of limitations are affirmative defenses, not pleading requirements.").)

Fraud claims are subject to a three-year statute of limitations period.  Cal. Code Civ. Proc. § 338(d).  "The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." *Id*.  This discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005).

From the face of the FAC, it is unclear first, when Defendants first began paying Plaintiff less than the agreed upon sum and not including the accounting of the fees; and second, when Plaintiff discovered  Defendants were shorting him.  (Dkt. No. 53 ¶¶ 21-24.)  Plaintiff alleges that Defendants paid him the correct amount in February 2012, but "[a]fter this first payment, Defendant Schaffer, in direct contravention of the agreement . . . began to pay Plaintiff less than the contracted 40% on Browner's representation fees."  (*Id*. ¶ 21.)  However, Plaintiff does not allege when he discovered that Defendants were paying him less than the contracted amount, stating only that "[a]fter repeated efforts, Plaintiff obtained a copy of Browner's contract on his own . . . [and] discovered that he had not been paid the agreed upon 40% of 3% as contracted[.]"  In his opposition, Plaintiff states that he did discovered the fraud in 2016; however, because he did not include this fact in his FAC, the Court may not consider it.  *Lee v City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

Given that the that the FAC supports an inference that Defendants were paying Plaintiff per season,[5] and that they mailed Plaintiff his first check in 2012 (Dkt. No. 53 ¶ 20), the

---

[5] *See supra* footnote 2.

allegations plausibly support an inference that Plaintiff did not receive his second, short payment until at least 2013, and a copy of Mr. Browner's contract until sometime after that. Defendants have not met their burden of demonstrating that Plaintiff's allegations prove that his fraud claim is barred by the statute of limitations as a matter of law.

### 3. Unjust Enrichment

Defendants next argue that Plaintiff cannot pursue an unjust enrichment claim "if such claims are based on an oral agreement barred by the statute of frauds." (Dkt. No. 57 at 21.) Plaintiff, however, brings a claim for breach of a written contract which, at this early stage of the proceedings, Defendants have not shown is barred by the statute of frauds.

### 4. Proper Party in Interest

Defendants lastly contend that Schaffer is not a proper party in interest in this action, and is immune as an officer or director of Authentic Athletix under a corporate veil theory. (*Id*. at 22.)

Directors and officers are agents of the corporate principal. *See Frances T. v. Village Green Owners Assn.*, 42 Cal. 3d 490, 505 (1986); *see also APSB Bancorp. v. Thornton Grant*, 26 Cal. App. 4th 926, 931 (1994). "An agent is liable for her or his own acts, regardless whether the principal is also liable." *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1381 (2000), as modified on denial of reh'g; *see also* Cal. Civ. Code, § 2343.

Defendants concede that an officer or director may be joined as a defendant "if they personally directed or participated in tortious conduct." (Dkt. No. 57 at 22.) Furthermore, an officer or director may also be personally liable for breach of contract if he purports to bind himself individually or is acting as an alter ego of the breaching party. *U.S. Liab. Ins. Co. v. Haidinger–Hayes,* 1 Cal. 3d 586, 595 (1970); *Ultratech, Inc. v. Ensure NanoTech (Beijing)*, Inc., 108 F. Supp. 3d 816, 826 (N.D. Cal. June 5, 2015).

Plaintiff alleges that he communicated exclusively with Schaffer; Schaffer asked Plaintiff to wait to sign a formal contract until he had left All Sports, indicating he was binding himself as an individual; Plaintiff and Schaffer negotiated the new contract via email; and Schaffer made the representations to Plaintiff regarding his intention to provide a written contract. (Dkt. No. 53 ¶¶ 14-17, 19.) At this stage, Plaintiff has alleged sufficient facts that Schaffer is personally liable in

14

this action and the Court declines to dismiss on these grounds.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is DENIED. The Court will hold an initial case management conference at 1:30 p.m. on March 30, 2017; the parties shall submit a joint case management conference statement with a proposed scheduled by March 23, 2017.

The parties shall exchange initial disclosures by March 23, 2017.

**IT IS SO ORDERED.**

Dated: March 20, 2017

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

15