UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEY LONG,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AUTHENTIC ATHLETIX LLC, et al.,<br><br>　　　　Defendants. | Case No. 16-cv-03129-JSC<br><br>**ORDER RE: SUMMARY JUDGMENT**<br>Re: Dkt. No. 75 |

Plaintiff Joey Long seeks to recover damages from Peter Schaffer and Authentic Athletix LLC (together, "Defendants"), based on breach of a written contract and related claims. (Dkt. No. 53.) Now pending before the Court is Defendants' motion for summary judgment. (Dkt. No. 75.) Having carefully considered the parties' submissions, and having had the benefit of oral argument on November 16, 2017, the Court DENIES Defendants' motion.

**BACKGROUND**

On September 6, 2011, Mr. Long emailed Mr. Schaffer, a sports agent at All Pro Sports, regarding his pay as a result of signing a football player named Brandon Browner. (Dkt. No. 79-2 at 1.) Mr. Long requested "a bigger percentage" because Mr. Long felt that he "did all the work." (*Id.*) Mr. Schaffer responded "absolutely not" because Mr. Long had "no idea" how much work Mr. Schaffer had done to "keep [Browner] in the league." (*Id.*) One week later on September 13, 2011, Mr. Schaffer announced via email that he was leaving his employment at All Pro Sports and starting a new company called Authentic Athletix, LCC. (Dkt. No. 78-2 at 3.) Approximately 30 minutes later Mr. Long responded to Mr. Schaffer's announcement, stating that he would like to continue his working relationship with Mr. Schaffer and requested a "fair and clear contract for

future business purposes." (*Id*. at 5.) The parties thereafter shared a string of emails that afternoon, September 13, 2011:

- **2:04 pm PDT**: Mr. Long stated he will need a new contract with Authentic Athletix, business cards, and a "spot on the website." Mr. Long also requested a percentage of 50% for "whomever I bring to Authentic Athletix. (*Id*. at 2)

- **2:06 pm**: Mr. Schaffer replied that he will work on the cards and websites but "no one is getting fifty percent." (*Id*.)

- **2:56 pm**: Mr. Schaffer stated, "I am doing deals that are fair to people based upon production." Mr. Schaffer explained that he needed production from Mr. Long and that he would be willing to "look at a deal that increases" as Mr. Long's production increased, but for the moment Mr. Long needed to "focus on production." (*Id*.)

- **3:16 pm**: Mr. Schaffer said "Joe I have no problems at all with a written agreement and that is fine." (*Id*. at 1.)

- **3:18 pm**: Mr. Long responded that he would like a "NEW contract" since Mr. Long's last contract was now "void based on [Mr. Schaffer's] departure from All Pro Sports." He requested Mr. Schaffer create the new contract as "soon as possible." (*Id*.)

- **3:41 pm PDT**: Mr. Long stated "I will accept 40% on Brandon Browner being that I single handedly recruited him" and requested "33% on everybody else that goes up based on the dollars I bring to Authentic Athletix." Mr. Long was "not comfortable with a 'word of mouth' contract" and wanted "a written contract in place...within 7 days of this email." (*Id*.)

- **3:46 pm**: Mr. Schaffer responded, "Tuesdays are crazy. Let's talk tonight." (*Id*.)

- **4:13 pm**: Mr. Long stated that in order to work he wanted "a written contract with Authentic Athletix." Mr. Long was not comfortable "working on a word of mouth deal." Mr. Long explained "I brought Brandon Browner to you and I had all of the influence to do so." Mr. Long wanted to get his contract done and move on so that he could "focus on being productive." Mr. Long then clarified "I can[not] and will not move forward unless I have a written deal in place. I am requesting that our deal be written within 7 days of this email." (*Id*.)

The following day, Mr. Schaffer and Mr. Long exchanged emails regarding a new Authentic Athletix business email address for Mr. Long. Mr. Long sent Mr. Schaffer an email with the address "joey@agentaa.com" in the body of the message. (*Id*. at 8.) Mr. Schaffer copied an

2

individual named Scott, and requested that Scott set up the "joey@agentaa.com" address for Mr. Long. (*Id*.) Mr. Schaffer instructed Mr. Long to email Scott regarding the details of how to set up his new business emails. (*Id*.) Mr. Long later sent Scott an email stating "I was calling to confirm my email with Authentic Athletix, 'joey@agentaa.com.'" (*Id*. at 6.) Mr. Long also requested access to his business email from his yahoo email account. (*Id*.) Two days later Mr. Long exchanged emails with Alison Schaffer, who requested Mr. Long email her his phone number and name for Mr. Long's new Authentic Athletix business cards. (*Id*. at 9.) Mr. Long responded that day with his name, Joey Long, and phone number. (*Id*.)

Approximately four months later, in February 2012, Mr. Schaffer forwarded Mr. Long an email entitled "Browner" stating that Browner was sending a check that evening. (*Id*. at 13.) Mr. Schaffer then provided Mr. Long the "math - for your convenience" concerning his pay. Mr. Schaffer stated the "amount being sent [is] $11,250" and therefore "forty percent for you is $4,500 minus your expenses." (*Id*.) Plaintiff alleges that Mr. Schaffer began to pay Plaintiff less than the contracted 40% on Browner's representation fees after this initial payment. (Dkt. No. 53 ¶ 21.)

Three years later, in June 2015, Mr. Long wrote Mr. Schaffer regarding his pay: "As I have stated before. Our agreement on Browners [sic] fees is 40% of 3%. I have not been adequately paid up until this point." (Dkt. No. 78-6 at 2.) Mr. Long requested copies of checks Mr. Browner made to Authentic Athletix and the remainder of the money owed to Mr. Long within seven days. (*Id*.) Mr. Schaffer responded that "the deal on the new contract is one third. Thats [sic] it." (*Id*. at 1.)

**DISCUSSION**

Defendants move for summary judgment arguing: (1) Plaintiff's contract claims fail as barred by the oral contracts two-year statute of limitations; and (2) in the alternative, the claims are barred by the statute of frauds.

**1.     Statute of Limitations**

Defendants argue the contract claims fail because the two-year statute of limitations for oral agreements applies and more than two years passed from Defendants' alleged breach and the filing of Plaintiff's lawsuit. The statute of limitations is an affirmative defense on which

3

Defendants bear the burden. *Williams v. Wells Fargo Bank, N.A.*, 2017 WL 1374693, at \*4 (N.D. Cal. Apr. 14, 2017) (citing *Payan v. Aramark Mgmt. Servs. Ltd. Partnership*, 495 F.3d 1119, 1122 (9th Cir. 2007)).

An action on "any contract, obligation or liability founded upon an instrument in writing" must be commenced within four years after accrual of the action. Cal. Code Civ. Pro. § 337(1). An action on "a contract, obligation or liability *not* founded upon an instrument of writing" must be commenced within two years after accrual. Cal. Code Civ. Pro. § 339(1) (emphasis added). An action for breach of contract generally accrues when the contract is breached. *Romano v. Rockwell Int'l, Inc.*, 14 Cal.4th 479, 488 (1996).

Defendants argue the breach of the alleged agreement accrued sometime after February 2012, the date Mr. Schaffer first and last paid Plaintiff 40% of Mr. Browner's representation fees. Because Plaintiff filed his original complaint in June 2016, Defendants insist the contract claims are barred by the two-year statute of limitations.

Defendants have not established that every reasonable trier of fact would have to find the facts such that the two-year rather than the four-year statute of limitations applies. For an action to be "founded upon an instrument in writing" the writing at issue must "contain a contract to do the thing for the nonperformance of which the action is brought." *E.O.C. Ord, Inc.* v. *Kovakovich*, 200 Cal.App.3d 1194, 1201 (1988) (internal quotation marks and citation omitted). A contract need not be signed to be considered "in writing" for statute of limitations purposes; instead, a written offer may be accepted orally or by acceptance of performance. *Amen v. Merced County Title Co.*, 58 Cal.2d 528, 532 (1962); *see also E.O.C. Ord, Inc.*, 200 Cal.App.3d at 1201 (concluding there was a contract because although client never signed attorney's fee agreement letter, client accepted agreement orally and also accepted attorney's performance thereunder).

A reasonable trier of fact could find that Mr. Long's September 13, 2011 emails, and in particular, the email at 3:41 p.m. PST, constitute an offer in writing. A reasonable trier of fact could also find from Defendants' subsequent conduct that they accepted that offer. Specifically, the issuance to Mr. Long of Authentic Athletix email and business cards and the February 2012 email recording Mr. Schaffer's calculation of 40% of the income from Browner to be paid to Mr.

4

Long, along with his actual payment of 40%, support a finding that Defendants accepted Mr. Long's offer. "[A]cceptance of an offer . . . may be manifested by conduct as well as by words," *Russell v. Union Oil Co.*, 7 Cal. App. 3d 110, 114 (1970), and may be "implied through action or inaction." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014); see *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991). "The manifestation of assent to a contractual provision may be wholly or partly by written or spoken words or by other acts or by failure to act." *Merced County Sheriff's Employees' Assn.*, 188 Cal.App.3d 662, 670 (1987) (internal citations omitted). "The requirements [for the four year statute of limitations] are only that there be a writing containing all terms and that there be acceptance by the party to be charged." *E.O.C. Ord. Inc.*, 200 Cal.App.3d at 1201. "How that acceptance is manifested is a matter of proof." *Id.*

Defendants respond that the email cannot be the basis for the contract because it does not include all of the contract's terms; they emphasize that it does not say anything about what Mr. Long is to do for that 40%. But whether the email contains all of the essential contract terms is disputed; the email contents themselves reflect that the proposed agreement was that in consideration for his working for Authentic Athletix in the future and the work he did in the past to recruit Mr. Browner, Defendants would pay Mr. Long 40% of every 3% Defendants were paid by Mr. Browner. And, in fact, Defendants did just that with the first check from Mr. Browner following the email.

That Mr. Long insisted in his email that he wanted a written contract within seven days does not mean that his alleged contract with Defendants is subject to the oral contract statute of limitations. Mr. Long, who is not an attorney, was not purporting to apply California law as to what constitutes an agreement in writing for purposes of the statute of limitations. In other words, a writing and a defendant's subsequent conduct may be sufficient to satisfy California Code of Civil Procedure section 337(1) for purposes of the statute of limitations, but not be a formal written agreement signed by the parties to the contract. Defendants' reliance on *Smissaert v. Chiodo*, 163 Cal.App.2d 827 (1958), is unpersuasive. There the trial judge found that because the parties had signed an addendum that expressly stated that any agreement "is subject and

5

conditioned upon the parties agreeing upon and reducing to writing all terms and conditions necessary and incidental to the validity of said proposed agreement," the plaintiff's deposit was but one step in a negotiation that ultimately failed and thus there was no final agreement that could be breached. *Id.* at 829-30. The appellate court held that the evidence was sufficient to support the trial court's finding "although it might support conclusions to the contrary." *Id.* at 830. Similarly, here, while a trier of fact might find that notwithstanding Defendants' post-offer conduct they intended for negotiations to be ongoing until a formal signed agreement was entered, a trier of fact is not required to make such a finding.

Having determined that a reasonable trier of fact could find facts that would require application of the four-year statute of limitations, the Court also concludes that Defendants have not shown that the contract causes of action accrued more than four years before the lawsuit was filed. Indeed, Defendants do not offer any evidence as to when they accrued; they have thus not met their burden of establishing as a matter of law that the statute of limitations bars the claims. While a jury might find otherwise, it is a jury question.

Accordingly, Defendants' motion for summary judgment of Plaintiff's contract claims for failure to file within the statute of limitations is denied.

**2. Statute of Frauds**

Defendants also argue that the breach of contract claims are barred by the statute of frauds.

The statute of frauds, like the statute of limitations, is an affirmative defense and thus Defendants bear the burden of proving its application. *See* Fed R. Civ. P. 8(c). The defense provides that certain contracts are invalid unless the contract, "or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent." Cal. Civ. Code. § 1624. To satisfy the statute of frauds the memorandum must "identif[y] the subject of the parties' agreement, show[] that they made a contract, and state[] the essential contract terms with reasonable certainty." *Sterling v. Taylor*, 40 Cal. 4th 757, 766 (2007). "Indeed, in most instances it is not even necessary that the parties intended the memorandum to serve a contractual purpose." *Id.* This is because "the statute of frauds merely serves an evidentiary purpose." *Id.* (internal quotation marks and citation omitted).

Mr. Long identifies the September 13, 2011 emails as the writings reflecting the parties' contract. The email reflecting the contract's terms, however, is *to* Mr. Schaefer not *from* Mr. Schaefer and thus is not "subscribed by the party to be charged or by his agent." *See Haemlani v. Guerrero*, 902 F.2d 1412, 1414 (9th Cir. 1990) (holding that real estate contract not signed by party to be charged was not enforceable against that party under the California statute of frauds). The issue, then, is whether the statute of frauds applies. It does not.

An agreement that by its terms is not to be performed within a year from the making thereof falls within the statute of frauds. Cal. Civ. Code. § 1624(a)(1). The contract terms themselves must reveal that it cannot be performed within one year. *See White Lighting Co. v. Wolfson*, 68 Cal.2d 336, 343 (1968) (concluding Section 1624(a)(2) applies only to "those contracts which, by their terms, cannot possibly be performed within one year"); *Jenkins v. Family Health Program*, 214 Cal.App.3d 440, 445 (1989)*(*applying *White Lighting Co.)*.

Defendants argue that their purported agreement with Mr. Long is a service contract which cannot be performed within one year and thus the statute of frauds applies. Their argument, however, is foreclosed by the California Supreme Court's decision in *White Lightening Co*. There the court held that "the statute of frauds does not apply to employment contracts for an indefinite period merely because the contract provides that payment will be forthcoming on termination of the employment relationship." 68 Cal.2d at 344. Nor does it apply "to employment contracts because the compensation for the services is to be measured by their value to their employer over a period of more than one year." *Id.* Viewing the evidence in the light most favorable to Mr. Long, his service contract with Defendants could be performed in less than one year; that is, it was an at-will agreement which could be terminated by either side at any time. That under Mr. Long's interpretation he would still be entitled to 40% of what Defendants received for Mr. Browner does not mean the contract cannot be performed within a year and thus falls within the statute of frauds. *Id.* at 344 ("Since . . . the alleged oral contract may be terminated at will be [sic] either party, it can, under its terms, be performed within one year. When Wolfson's employment relationship with White was terminated, Wolfson had completely performed; White's performance consisted of nothing more than compensating Wolfson").

Accordingly, Defendants motion for summary judgment on Plaintiff's contract claims as barred by the statute of frauds is denied.

**CONCLUSION**

For the reasons described above, Defendants' motion for summary judgment is DENIED. The Court will address Plaintiff's request for a discovery extension at the hearing on his motion to compel and for sanctions. The Court notes that Plaintiff set the motion for hearing on January 4, 2018 (*see* Dkt. No. 84); however, that hearing date violates the Northern District of California Local Rules which require the hearing to be set at least 35 days after the motion is filed. N.D. Cal. Civ. L.R. 7-2(a). Accordingly, the hearing is continued to January 18, 2018 at 2:00 p.m. All other deadlines for oppositions and replies remain the same. Given the Court will hear Plaintiff's request for a discovery extension on January 18, 2018, Plaintiff's ex parte motion for the same relief is denied. (Dkt. No. 81.)

This Order disposes of Docket Nos. 75 and 81.

**IT IS SO ORDERED.**

Dated: December 19, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge